

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
01/25/2018

| | |
|---|---|
| In re: | Chapter 11 |
| EXPRO HOLDINGS US INC., *et al.*,[1] | Case No. 17-60179 (DRJ) |
| Debtors. | (Jointly Administered) |

**FINAL ORDER (I) AUTHORIZING DEBTORS**
**(A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO**
**11 U.S.C.  §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e)**
**AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO**
**11 U.S.C. § 363, AND (II) GRANTING ADEQUATE PROTECTION**
**TO PREPETITION CREDIT AGREEMENT SECURED PARTIES**
**PURSUANT TO 11 U.S.C.  §§ 361, 362, 363, 364 AND 507(b)**
(Relates to Docket No. 17)

Upon the motion (the "**Motion**") of Expro FinServices S.à r.l. (the "**Borrower**") and

Expro US Finco LLC (the "**Co-Borrower**" and, together with the Borrower, the "**Borrowers**")

and their affiliated debtors, each as a debtor and debtor-in-possession (collectively, the

"**Debtors**") in the above captioned cases (the "**Cases**"), pursuant to sections 105, 361, 362,

363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the

---

[1]        The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if applicable, are as follows: Expro Holdings US, Inc. (9304); Exploration and Production Services (Holdings) Ltd (4457); Expro (B) Sdn Bhd (BN) (4498); Expro Americas, LLC (6756); Expro Benelux Ltd. (4470); Expro do Brasil Servicos Ltda (5788); Expro Eurasia Ltd. (4463);  Expro FinServices Sarl (5691); Expro Group Australia PTY Ltd. (4495); Expro Group Canada Inc. (1672); Expro Gulf Ltd. (4486);  Expro Holdings Australia 1 PTY Ltd. (4386); Expro Holdings Australia 2 PTY Ltd. (4387); Expro Holdings Norway AS (2951); Expro Holdings UK 2 Ltd. (5169); Expro Holdings UK 3 Ltd (5168); Expro Holdings UK 4 Ltd. (5167); Expro International BV (4476); Expro International Group Holdings Ltd. (5170); Expro International Group Ltd. (4453); Expro   International Ltd. (4461); Expro Meters Inc. (1666); Expro  North Sea Ltd. (4460); Expro Norway AS (1675); Expro Overseas Inc. (4481); Expro Overseas Ltd. (4489); Expro Resources Ltd. (4472); Expro Servicos S de R L de C.V. (1674); Expro Tool S de R L de C.V. (1673); Expro Trinidad Ltd.; Expro US Finco LLC (7558); Expro US Holdings, LLC (1005); Expro Worldwide BV (1668); Exprotech Nigeria Ltd. (4478); Petrotech AS (5875); Petrotech BV (5888); PT Expro Indonesia (4491).  The location of the Debtors' registered office is 14-16 Cross Street, 3rd Floor, Reading, Berkshire, RG1 1SN, United Kingdom.

Error! Unknown document property name.

United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Bankruptcy Local Rules for the Southern District of Texas (the "**Local Bankruptcy Rules**") and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**") promulgated by the United States Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking a final order (the "**Final Order**"), among other things:

A. authorizing the Borrowers to obtain secured postpetition financing (the "**DIP Financing**") and for Expro Holdings UK 3 Limited ("**Parent**"), each Borrower (other than with respect to its Obligations (as defined below)), and each other subsidiary of Parent that is a Debtor (each a "**Guarantor**" and collectively, the "**Guarantors**"; the Guarantors collectively with the Borrowers, the "**Loan Parties**"), to unconditionally guaranty, on a joint and several basis, the Borrowers' obligations in connection with the DIP Financing, consisting of (i) a senior secured delayed-draw term loan credit facility (the "**DIP Term Facility**"), in an aggregate principal amount of up to $125 million (the actual available principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)) and (ii) a letter of credit facility (the "**DIP Bonding Facility**" and together with the DIP Term Facility, the "**DIP Facilities**") to be provided by JPMorgan Chase Bank, N.A. (in its capacities as issuing bank under the DIP Bonding Facility and administrative agent and collateral agent under the DIP Term Facility, the "**DIP Agent**") in an amount of up to $30 million, all on the terms and conditions set forth in the Interim Order (as defined below), this Final Order and the DIP Documents (as defined below);

B.      authorizing the Parent and Borrowers to obtain a commitment to enter into a cash collateralized letter-of-credit exit facility to be provided by JPMorgan Chase Bank, N.A. in an amount of up to $30 million (the "**L/C Exit Facility**");

C.      authorizing the Loan Parties to execute and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement dated as of December 20, 2017, among the Borrowers, the Guarantors, the lenders from time to time thereto, (collectively, the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), and the DIP Agent, substantially in the form attached to the Motion as <u>Exhibit D</u> (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, including, without limitation, the Pledge and Security Agreement dated as of the Closing Date (each as defined in the DIP Credit Agreement), among the Loan Parties and the DIP Agent, the "**DIP Documents**") and to perform all such other and further acts as may be required in connection with the DIP Documents;

D.      granting adequate protection to the Prepetition Agents and the Prepetition Lenders (each as defined below) under or in connection with (i) that certain Credit Agreement, dated as of September 2, 2014 (as amended, supplemented or otherwise modified prior to the date hereof, the "**Prepetition Credit Agreement**"), by and among Parent, the Borrowers, the other Debtors and non-Debtor subsidiaries of Parent party thereto (the "**Prepetition Guarantors**") and the lenders and issuing banks party thereto from time to time (collectively, in such capacities, the "**Prepetition Lenders**"), HSBC Bank USA, National Association, as administrative agent (the "**Prepetition Administrative Agent**"), HSBC Corporate Trustee Company (UK) Limited), as

Error! Unknown document property name.

collateral agent (the "**Prepetition Collateral Agent**" and, together with the Prepetition

Administrative Agent and each in their respective capacities, the "**Prepetition Agents**" and,

together with the Prepetition Lenders, the "**Prepetition Credit Agreement Secured Parties**";

the Prepetition Credit Agreement Secured Parties together with the other Secured Parties (as

defined in the Prepetition Credit Agreement), the "**Prepetition Secured Parties**") and (ii) that

certain Security Agreement, dated as of September 2, 2014, between the grantors party thereto

and the Prepetition Collateral Agent (the "**Security Agreement**" and collectively with the

Prepetition Credit Agreement, and the mortgages and all other agreements and documentation

executed in connection therewith, the "**Existing Agreements**"), whose liens and security

interests are being primed by the DIP Liens (as defined below);

E.      subject to the restrictions set forth in the DIP Documents and this Final Order,

authorizing the Loan Parties to continue to use Cash Collateral (as defined below) and all other

Prepetition Collateral (as defined below) in which any of the Prepetition Credit Agreement

Secured Parties have an interest, and the granting of adequate protection to the Prepetition

Secured Parties with respect to, *inter alia*, such use of their Cash Collateral and the other

Prepetition Collateral;

F.      subject to certain challenge rights of parties in interest set forth herein, approving

certain stipulations by the Debtors with respect to the Existing Agreements and the liens and

security interests arising therefrom;

G.      granting superpriority claims pursuant to section 364(c)(1) of the Bankruptcy

Code to the DIP Secured Parties payable from, and secured by liens pursuant to section 364(c)(2)

and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the

Bankruptcy Code on, all prepetition and postpetition property of the Loan Parties' estates (other

4

than certain excluded property as provided in the DIP Documents (the "**Excluded Assets**") and all proceeds thereof (including any Avoidance Proceeds (as defined below)), subject only to the Carve-Out;

H.      waiving the Debtors' right to surcharge the Prepetition Collateral and the Debtor Collateral pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; and

I.      modifying the automatic stay to the extent set forth herein and in the DIP Documents;

and due and appropriate notice of the Motion, the relief requested therein and the interim hearing on the Motion (the "**Interim Hearing**") having been served by the Debtors in accordance with Paragraph 35 of the interim order (Docket No. 75) (the "**Interim Order**"); and the Interim Hearing having been held by this Court on December 19, 2017; and the Court having entered the Interim Order on December 19, 2017; and the final hearing on the Motion (the "**Final Hearing**") having been held on January 25, 2018, and the relief requested in the Motion being in the best interests of the Debtors, their creditors and their estates and all other parties-in-interest in these Cases; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record made by the Debtors in the Motion, in the Declaration of Ari Lefkovits in Support of the Motion (attached to the Motion as Exhibit B), in the Declaration of John McAlister in Support of Chapter 11 Petitions and First Day Motions (Docket No. 4), at the Interim Hearing and the Final Hearing; and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

Error! Unknown document property name.

1.      *Disposition.*  The relief requested in the Motion is granted on a final basis in accordance with the terms of this Final Order.  Any objections to the Motion with respect to the entry of this Final Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Final Order shall become effective immediately upon its entry.

2.      *Jurisdiction.*  This Court has core jurisdiction over the Cases (as defined below), this Motion, and the parties and property affected hereby pursuant to 28 U.S.C.  §§ 157(b) and 1334 and the *Order of Reference to Bankruptcy Judges*, General Order 2012-6 (S.D. Tex. May 24, 2012) (Hinojosa, C.J.). This is a core proceeding pursuant to 28 U.S.C.  § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C.  §§ 1408 and 1409.

3.      *Notice*.  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Complex Case Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Final Order shall be required.

4.      *Debtors' Stipulations.*  Without prejudice to the rights of any other party in interest and subject to the limitations thereon contained in paragraphs 18 and 19 below, the Debtors admit, stipulate and agree that:

(a)      (i) as of the date (the "**Petition Date**") of the filing of the Cases, the Borrowers and the Prepetition Guarantors were justly and lawfully indebted and liable to (A) the Prepetition Credit Agreement Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $1,386,000,000 in respect of loans made pursuant to, and in accordance with the terms of, the Existing Agreements, plus accrued and unpaid interest thereon and fees, expenses (including any attorneys', accountants', appraisers'

Error! Unknown document property name.

and financial advisors' fees, in each case, that are chargeable or reimbursable under the Existing Agreements), charges, indemnities and other obligations incurred in connection therewith (whether arising before or after the Petition Date) as provided in the Existing Agreements (collectively, the "**Prepetition Debt**"), which Prepetition Debt has been guaranteed on a joint and several basis by all of the Prepetition Guarantors, (ii) the Prepetition Debt constitutes the legal, valid and binding obligations of the Borrowers and the Prepetition Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Debt or any payments made to the Prepetition Credit Agreement Secured Parties or applied to or paid on account of the obligations owing under the Existing Agreements prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(b)     the liens and security interests granted to the Prepetition Credit Agreement Secured Parties (the "**Prepetition Credit Agreement Liens**") pursuant to and in connection with the Existing Agreements, are: (i) valid, binding, perfected (subject to the limitations set forth in the Collateral and Guaranty Requirement (as defined in the Prepetition Credit Agreement)), enforceable, first-priority liens and security interests in the Collateral (as defined in the Prepetition Credit Agreement) (the "**Prepetition Collateral**"); (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (iii) as of the Petition Date are subject and subordinate only to valid, perfected and unavoidable liens permitted under the

Error! Unknown document property name.

Existing Agreements to the extent that such permitted liens are senior to or *pari passu* with the Prepetition Credit Agreement Liens;

(c)     By virtue of any of the actions taken with respect to, in connection with, related to or arising from the Existing Agreements, none of the Prepetition Credit Agreement Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors;

(d)     the liens granted to the DIP Agent on behalf of the DIP Secured Parties pursuant to this Final Order shall be perfected, valid, enforceable and non-avoidable liens against the Debtors;

(e)     no claims or causes of action exist against, or with respect to, the Prepetition Credit Agreement Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date;

(f)     effective as of the date of entry of the Interim Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Credit Agreement Secured Parties and their respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Existing Agreements, the obligations owing and the financial obligations made thereunder, the

8

negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order, whether such Released Claims are matured or unmatured or known or unknown;

(g)      that certain Intercreditor Agreement dated July 14, 2008 (as amended and restated on August 13, 2008 as further amended and restated on December 21, 2009, and as further amended and restated by that certain Amendment and Restatement Agreement dated September 2, 2014, and as otherwise amended, supplemented or otherwise modified from time to time prior to the date hereof, the "**Intercreditor Agreement**") is binding and enforceable against the Borrowers and the Prepetition Guarantors in accordance with its terms, and the Borrowers and the Prepetition Guarantors are not entitled to take any actions that would be contrary to the provisions thereof; and

(h)      all cash, securities or other property of the Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Loan Parties in any account or accounts with any depository institution (collectively, the "**Depository Institutions**") were subject to rights of set-off and valid, perfected, enforceable, first priority liens under the Existing Agreements and applicable law, for the benefit of the Prepetition Credit Agreement Secured Parties.  All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash

Error! Unknown document property name.

collateral" of the Prepetition Credit Agreement Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

    5.    *Findings Regarding the DIP Financing and Cash Collateral.*

    (a)    Good and sufficient cause has been shown for the entry of this Final Order.

    (b)    The Loan Parties need to obtain the full amount of the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures permitted by the DIP Credit Agreement, to provide letters of credit, bonding and guarantees on a post-petition basis and to satisfy other working capital and operational needs. The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness and new letters of credit under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

    (c)    The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) and incurring the Adequate Protection

Obligations, in each case, under the terms and conditions set forth in this Final Order and in the DIP Documents.

(d)     Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing and at the Final Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations granted to the Prepetition Credit Agreement Secured Parties, and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Final Order and the DIP Documents are fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Prepetition Credit Agreement Secured Parties have consented to the use of Cash Collateral and the other Prepetition Collateral, the priming of the Prepetition Credit Agreement Liens pursuant to Section 364(d)(1) of the Bankruptcy Code, and the Debtors' entry into the DIP Documents in accordance with and subject to the terms of this Final Order and the DIP Documents.

(f)     The DIP Financing, as well as the terms of the Adequate Protection Obligations and Adequate Protection Liens, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the DIP Agent and the DIP Lenders and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (collectively, the "**DIP Loans**"), (ii) the obligations under the DIP Bonding Facility and (iii) any "**Obligations**" (as defined in the DIP Credit Agreement) of

Error! Unknown document property name.

the Loan Parties owing to the DIP Agent, any DIP Lender or any of their respective affiliates, in accordance with the terms of the DIP Documents, including any obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Agent or the DIP Lenders and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under the Interim Order, this Final Order or the DIP Documents (the foregoing in clauses (i) through (iii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agent and the DIP Secured Parties and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition Credit Agreement Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Credit Agreement Secured Parties (and the successors and assigns thereof), and shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

Error! Unknown document property name.

(g)     The Prepetition Credit Agreement Secured Parties are entitled to the adequate protection provided in this Final Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in this Final Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Credit Agreement Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Final Order and in the context of the DIP Financing authorized by this Final Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Credit Agreement Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

6.     *Authorization of the DIP Financing and the DIP Documents.*

(a)     In addition to the authority granted in the Interim Order, the Loan Parties are authorized to execute, enter into and perform all obligations under the DIP Documents.  The Borrowers are authorized to forthwith borrow money pursuant to the DIP Credit Agreement, and the Guarantors are authorized to guaranty the Borrowers' obligations with respect to such borrowings and request letters of credit and bonds under the DIP Bonding Facility, subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents (and subject to the terms and conditions set forth herein and

13

therein), and for other general corporate purposes of, the Loan Parties, including the payment of expenses of administration in the Cases and the Adequate Protection Obligations.

(b)     In addition to the authority granted in the Interim Order, the Debtors are authorized to enter into a commitment for the L/C Exit Facility with JPMorgan Chase Bank, N.A., and the commitment therefor is approved.

(c)     In furtherance of the foregoing and without further approval of this Court and in addition to the authority granted in the Interim Order, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)     the execution and delivery of, and performance under, each of the DIP Documents;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent and the requisite DIP Lenders may agree, it being understood that no further approval of the Court shall be required for authorizations, amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees and other expenses (including any attorneys', accountants', appraisers' and financial advisors' fees), amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder;

14

(iii)    the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees including, without limitation, any closing fee, structuring fee, commitment fee, letter of credit fee, exit fee, prepayment fee or agency fee (which fees were, and were deemed to have been, approved upon entry of the Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise), and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Credit Agreement (and in any separate letter agreements between any or all Loan Parties, on the one hand, and the DIP Agent and/or DIP Lenders, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time, including, without limitation, fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders, in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens and the DIP Superpriority Claims as permitted herein and therein.

(d)    Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Loan Parties, enforceable against each Loan Party in accordance with the terms of the DIP Documents and this Final Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this

15

Final Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

7.    *DIP Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) (including the Prepetition 507(b) Claim (as defined below)) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Loan Parties and all proceeds thereof (excluding the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively,

Error! Unknown document property name.

"**Avoidance Actions**"), but including any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")), subject only to payment of the Carve-Out.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(b)     For purposes hereof, the "**Carve-Out**" is an amount equal to the sum of (i) all fees required to be paid to the clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an amount not to exceed $50,000 (without regard to the notice set forth in (iii) below); and (iii) (A) all unpaid claims for fees, costs, disbursements and expenses to the extent allowed at any time, whether by interim order, final order, procedural order or otherwise of persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (collectively, the "**Professional Fees**") incurred at any time on or prior to the Trigger Date, plus (B) Professional Fees incurred after the Trigger Date in an amount not to exceed $5,000,000, of professionals retained by the Debtors (the "**Carve-Out Cap**"), in each case subject to the limits imposed by the Interim Order, this Final Order or otherwise on Professional Fees permitted to be incurred in connection with any permitted investigation of the claims, liens and defenses against any Prepetition Credit Agreement Secured Party; *provided*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any other grounds.  "**Trigger Notice**" shall mean a written notice delivered by the DIP Agent describing the event of default that is alleged to continue

Error! Unknown document property name.

under the DIP Documents (or after the payment in full of the DIP Obligations, the Prepetition

Agents describing the reason for termination of the use of Cash Collateral).  Immediately upon

delivery of a Trigger Notice, and prior to the payment to any Prepetition Credit Agreement

Secured Party on account of any adequate protection or otherwise, the Debtors shall be required

to deposit, in a segregated account not subject to the control of the DIP Agent or the Prepetition

Agents (the "**Carve-Out Account**"), an amount equal to the Carve-Out Cap.  The funds on

deposit in the Carve-Out Account shall be available only to satisfy obligations benefitting from

the Carve-Out, and the DIP Agent and the Prepetition Agent, each on behalf of itself and the

relevant secured parties, (i) shall not sweep or foreclose on cash of the Debtors necessary to fund

the Carve-Out Account and (ii) shall have a security interest upon any residual interest in the

Carve-Out Account available following satisfaction in cash in full of all obligations benefitting

from the Carve-Out.

(c)      For purposes hereof, the "**Trigger Date**" shall mean the earlier of (i) the

first business day after the occurrence of an Event of Default (as defined in the DIP Credit

Agreement) or (ii) the Maturity Date (as defined in the DIP Credit Agreement), and delivery

(including via email) of the Trigger Notice to the Borrowers' lead restructuring counsel and the

office of the United States Trustee for the Southern District of Texas (the "**U.S.  Trustee**").

(d)      Notwithstanding the foregoing, (x) the Carve-Out shall not include, apply

to or be available for any fees or expenses incurred by any party in connection with (a) the

investigation (other than, prior to the Trigger Date, as permitted under paragraph 19 of this Final

Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other

litigation, or assertions of any defense or counterclaim, against any of the DIP Lenders, the DIP

Agent, the Prepetition Lenders or each of the Prepetition Agents, each in such capacity, and their

18

respective agents, attorneys, advisors or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Existing Agreements (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agent or the Prepetition Credit Agreement Secured Parties; (c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any Debtor Collateral or Prepetition Collateral in accordance with the DIP Documents and this Final Order other than to seek a determination that an Event of Default has not occurred or is not continuing; or (d) paying any amount on account of any claims arising before the commencement of the Cases unless such payments are approved by an order of the Court, and (y) prior to the Trigger Date, the Carve-Out shall not be reduced by the payment or incurrence of Professional Fees allowed at any time by the Court.  Further, notwithstanding anything to the contrary in this Final Order, (i) the failure of the Carve-Out Account to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out and (ii) in no way shall the Approved Budget (attached to the Motion), the Carve-Out, the Trigger Notice, the Carve-Out Cap, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable to the Debtors.  For the avoidance of doubt, nothing herein shall modify or limit the rights of the Loan Parties set forth in the proviso at the end of Section 8.02 of the DIP Credit Agreement or limit their use of the Carve-Out in connection with such rights.

Error! Unknown document property name.

8.      *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation of filings by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Agent of, or over, any Debtor Collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Debtor Collateral**"), subject only to the payment of the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to the Interim Order, this Final Order and the DIP Documents, the "**DIP Liens**"):

(a)      <u>First Lien On Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a valid, perfected and non-avoidable lien (collectively, "**Unencumbered Property**"), including, without limitation, any and all unencumbered cash of the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of such cash, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and

Error! Unknown document property name.

the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than: (i) the Excluded Assets (as defined in the DIP Credit Agreement), but including any proceeds of Excluded Assets that do not otherwise constitute Excluded Assets; and (ii) the Avoidance Actions, but including the Avoidance Proceeds;

        (b)    <u>Liens Priming Prepetition Credit Agreement Liens</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and postpetition property of each Loan Party (including, without limitation, any and all cash and cash collateral (whether maintained with the DIP Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens and security interests granted to the Prepetition Secured Parties (the "**Prepetition Liens**"), which lien shall be senior in all respects to such Prepetition Liens.  Subject to subparagraph (c) below, such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens granted to the Prepetition Credit Agreement Secured Parties)

Error! Unknown document property name.

(collectively, the "**Primed Liens**") and to any liens and security interests to which such Primed Liens are senior or *pari passu* (other than any liens securing the Pension Debt (as defined in the DIP Credit Agreement), which shall rank *pari passu* with the DIP Liens), including any liens and security interests securing obligations under the Mezzanine Facility Agreement (as defined in the Prepetition Credit Agreement);

(c)      Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party subject to valid, binding and unavoidable liens other than Primed Liens on the Petition Date (including, without limitation, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, in each case other than (x) the Excluded Assets, but including any proceeds of Excluded Assets that do not constitute Excluded Assets and (y) the Avoidance Actions, which shall be (i) junior and subordinate to any valid, perfected and unavoidable liens (other than the Primed Liens and any liens securing the Pension Debt) in existence immediately prior to the Petition Date to the extent such liens are senior or *pari passu* to the Prepetition Credit Agreement Liens, and (ii) any such valid and unavoidable liens in existence immediately prior to the Petition

22

Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the

Bankruptcy Code *provided*, that nothing in the foregoing clauses (i) and (ii) shall limit the rights

of the DIP Secured Parties under the DIP Documents to the extent such liens are not permitted

thereunder; and

(d)     <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (i)

subject or subordinate to (A) any lien or security interest that is avoided and preserved for the

benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B)

unless otherwise provided for in the DIP Documents or in this Final Order, any liens or security

interests arising after the Petition Date, including, without limitation, any liens or security

interests granted in favor of any federal, state, municipal or other governmental unit (including

any regulatory body), commission, board or court for any liability of the Loan Parties, or (C) any

intercompany or affiliate liens of the Loan Parties or security interests of the Loan Parties; or

(ii) subordinated to or made *pari passu* with any other lien or security interest under section 363

or 364 of the Bankruptcy Code.

9.     *Maintenance of Letters of Credit*.  In addition to the authority granted in the

Interim Order, to the extent permitted by the DIP Documents, the Loan Parties are authorized to

maintain, request and renew letters of credit, guarantees and/or bonds under the DIP Credit

Agreement on an uninterrupted basis and to take all actions reasonably appropriate with respect

thereto on an uninterrupted basis.

10.     *Protection of DIP Lenders' Rights*.

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders

have any outstanding Commitments (as defined in the DIP Credit Agreement) under the DIP

Credit Agreement, the Prepetition Credit Agreement Secured Parties shall: (i) have no right to

Error! Unknown document property name.

and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Existing Agreements, the Interim Order or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such Debtor Collateral or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such Debtor Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Debtor Collateral unless, solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to the Interim Order or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date and (iv) deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such Debtor Collateral subject to any sale or disposition.

(b) To the extent any Prepetition Credit Agreement Secured Party has possession of any Prepetition Collateral or Debtor Collateral or has control with respect to any Prepetition Collateral or Debtor Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or Debtor Collateral, then such Prepetition Credit Agreement Secured Party shall be deemed to maintain such possession or

Error! Unknown document property name.

notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders, and the Prepetition Agents shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

(c)     Any proceeds of Prepetition Collateral subject to the Primed Liens received by any Prepetition Agent or Prepetition Credit Agreement Secured Parties in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by any Prepetition Agent shall be segregated and held in trust for the benefit of and forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The DIP Agent is hereby authorized to make any such endorsements as agent for each of the Prepetition Agents or any such Prepetition Credit Agreement Secured Parties.  This authorization is coupled with an interest and is irrevocable

(d)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to enforce all of their rights under the DIP Documents (including any cash dominion as provided for in the DIP Documents) and (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any further Commitment to the extent any such Commitment remains and (B) all Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties and (ii) upon the occurrence of an Event of Default and the giving of five business days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) via email to counsel to the Debtors and the U.S.  Trustee to (A) withdraw consent to the Loan Parties' continued use of Cash Collateral and

25

(B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law in any hearing regarding any exercise of rights or remedies under the DIP Documents, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and the Prepetition Credit Agreement Secured Parties hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Final Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders or the Prepetition Credit Agreement Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Debtor Collateral. Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Credit Agreement Secured Parties.

(e) No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Final Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral  (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

11.     *Limitation on Charging Expenses Against Collateral*.  Except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Debtor Collateral (including Cash

Error! Unknown document property name.

Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the Prepetition Agents or the Prepetition Lenders, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Agents, or the Prepetition Lenders and nothing contained in this Final Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders or the Prepetition Credit Agreement Secured Parties to any charge, lien, assessment or claim against the Debtor Collateral under section 506(c) of the Bankruptcy Code or otherwise.

12.     *Payments Free and Clear.*  Subject only to the Carve-Out, any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to the provisions of the Interim Order, this Final Order or the DIP Documents shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors.

13.     *Use of Cash Collateral.*  The Loan Parties are hereby authorized, subject to the terms and conditions of this Final Order, to use all Cash Collateral and the Prepetition Credit Agreement Secured Parties are directed promptly to turn over to the Loan Parties all Cash Collateral received or held by them; *provided* that (a) the Prepetition Credit Agreement Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Final Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

14.     *Adequate Protection of Prepetition Credit Agreement Secured Parties.*  The Prepetition Credit Agreement Secured Parties are entitled, pursuant to sections 361, 362, 363(e),

364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in all Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition Credit Agreement Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code, including, without limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition Credit Agreement Secured Parties' security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition Adequate Protection Claim**").  In consideration of the foregoing, the Prepetition Agents, for the benefit of the Prepetition Lenders, are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a)     _Prepetition Adequate Protection Liens_.  The Prepetition Agents (for itself and for the benefit of the Prepetition Lenders) are hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the Debtor Collateral including, without limitation, Unencumbered Property and the Avoidance Proceeds, in each case subject and subordinate only to (i) the DIP Liens and any liens to which the DIP Liens are junior and (ii) the Carve-Out (the "**Adequate Protection Liens**").

Error! Unknown document property name.

(b)        Prepetition Section 507(b) Claim.  The Prepetition Agents (for itself and the benefit of the Prepetition Lenders) are hereby granted, subject to the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Prepetition Adequate Protection Claim with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (the "**Prepetition 507(b) Claim**"); which Prepetition 507(b) Claim shall have recourse to and be payable from all of the Debtor Collateral including, without limitation, the Avoidance Proceeds.  The Prepetition 507(b) Claim shall be subject and subordinate only to the Carve-Out and the DIP Superpriority Claims.  Except to the extent expressly set forth in this Final Order or the DIP Credit Agreement, the Prepetition Credit Agreement Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all Commitments have been terminated.

(c)        Prepetition Credit Agreement Secured Parties Fees and Expenses. Without duplication of amounts required to be paid pursuant to the DIP Documents, (i) the Loan Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to the advisors to the Prepetition Agents and the ad hoc group of Prepetition Lenders (the "**First Lien Group**") (including, with respect to the First Lien Group and without limitation, Davis Polk & Wardwell LLP, Rothschild, Inc., and/or any local counsel retained on behalf of the First Lien Group (collectively, "**Local Counsel**") that accrued prior to the Petition Date in accordance with the Prepetition Credit Agreement) and (ii) the Loan

Error! Unknown document property name.

Parties shall pay in cash all reasonable and documented out-of-pocket professional fees, expenses and disbursements payable to the advisors to the Prepetition Agents or the First Lien Group (including, with respect to the First Lien Group and without limitation, Davis Polk & Wardwell LLP, Rothschild, Inc. and/or any Local Counsel), that have accrued on or after the Petition Date.  The payment of the fees, expenses and disbursements set forth in clause (ii) of the foregoing sentence shall be made within ten (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtors and the U.S.  Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date, but provided that the Debtors shall also file a notice (a "Fee Notice") of their intent to pay any prepetition "Invoiced Fees" within three (3) days of receipt. Such Fee Notice shall include only the name of the professional and the amount proposed to be paid.  The invoices for such Invoiced Fees shall include the number of hours billed (except for financial advisors compensated on other than an hourly basis) and a reasonably detailed description of services provided and the expenses incurred by the applicable professional; *provided*, *however*, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail (*provided*, that such invoice shall contain (except for financial advisors compensated on other than an hourly basis), at a minimum, summary data regarding hours worked by each timekeeper for the applicable professional).  The Debtors and the U.S.  Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the Prepetition Administrative Agent and the Prepetition Lenders of any hearing on such motion or other pleading, setting forth the specific objections to the

Error! Unknown document property name.

Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further*, that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.

      (d)      [Reserved]

      (e)      Information Rights.  The Debtors shall promptly provide the Prepetition Administrative Agent, on behalf of itself and the Prepetition Lenders, with all required written financial reporting and other periodic reporting that is required to be provided to the DIP Agent or the DIP Lenders under the DIP Credit Agreement.

      15.      *Reservation of Rights of Prepetition Credit Agreement Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Credit Agreement Secured Parties and any other parties' holding interests that are secured by Primed Liens; *provided* that any of the Prepetition Credit Agreement Secured Parties, upon a change in circumstances, may request further or different adequate protection, and the Debtors or any other party may contest any such request.

      16.      *Perfection of DIP Liens and Adequate Protection Liens.*

      (a)      In addition to the authority granted in the Interim Order, the DIP Agent, the DIP Lenders and the Prepetition Credit Agreement Secured Parties are authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing

31

statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Agent, on behalf of the DIP Lenders or the Prepetition Credit Agreement Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order.  Upon the request of the DIP Agent, each of the Prepetition Credit Agreement Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of the Prepetition Credit Agreement Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)     A certified copy of this Final Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Final Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

Error! Unknown document property name.

(c)      Notwithstanding anything to the contrary in the Motion, the DIP Documents or this Final Order, for purposes of this Final Order, in no event shall the Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease, license, contract or agreement or other property right to which any Debtor is a party, or any such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (x) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of any Debtor therein or (y) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract or agreement or other property right pursuant to any provision thereof, unless, in the case of each of clauses (x) and (y), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases, licenses, contracts or agreements or other property rights are collectively referred to as the "**Specified Contracts**"); *provided* that the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims and Prepetition 507(b) Claim shall in all events attach to and have recourse from all proceeds, products, offspring or profits from any and all Specified Contracts (including from the sale, transfer, disposition or monetization thereof).

17.      *Preservation of Rights Granted Under This Final Order.*

(a)      Other than the Carve-Out and other claims and liens expressly granted by this Final Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the DIP Agent and the DIP Lenders or the Prepetition Credit Agreement Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in paragraphs 8 or 14(a) of this Final Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of

33

the Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties; or (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties. No lien or security interest shall be granted to any other party in any of the Specified Contracts without first granting such lien or security interest to the DIP Agent, the DIP Lenders or the Prepetition Credit Agreement Secured Parties (solely with respect to the Adequate Protection Obligations), as applicable.

(b)     The Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Loan Parties to use Cash Collateral if any of the Loan Parties, without the prior written consent of the Required Lenders (as defined in the DIP Credit Agreement) seeks, proposes or supports (whether by way of motion or other pleadings filed with the Court or any other writing executed by any Loan Party or by oral argument), or if there is entered or confirmed (in each case, as applicable), or if there occurs:

(i)     a failure of the Debtors to make any payment under the Interim Order or this Final Order to any of the Prepetition Credit Agreement Secured Parties when due;

(ii)     a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in the Interim Order or this Final Order or (y) comply with any covenant or agreement in this Final Order in any material respect;

(iii)     any modifications, amendments, reversal or extensions of the Interim Order or this Final Order, and no such consent shall be implied by any other action, inaction or acquiescence by any party;

Error! Unknown document property name.

(iv)     an order converting or dismissing any of the Cases;

(v)     an order appointing a chapter 11 trustee in the Cases;

(vi)     an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code);

(vii)     a plan of reorganization other than an Acceptable Plan of Reorganization being proposed by the Debtors or confirmation thereof; or

(viii)     the sale of all or substantially all of the assets of the Loan Parties (except to the extent permitted under the DIP Documents), which does not provide for the repayment in full in cash of all DIP Obligations (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made).

Notwithstanding any order that may be entered dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered:  (i) the DIP Superpriority Claims, the Prepetition 507(b) Claim, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, Prepetition 507(b) Claim, DIP Liens and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent or the Prepetition

Error! Unknown document property name.

Administrative Agent, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations, DIP Liens, Adequate Protection Obligations or Adequate Protection Liens incurred by the Loan Parties to the DIP Agent, the DIP Lenders or the Prepetition Credit Agreement Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent or the Prepetition Administrative Agent, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Final Order, and the DIP Agent, the DIP Lenders and the Prepetition Credit Agreement Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)  Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Credit Agreement Secured Parties granted by the provisions of the Interim Order and this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission; (ii) the entry of an order approving the sale of any Debtor Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to

Error! Unknown document property name.

any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Credit Agreement Secured Parties granted by the provisions of the Interim Order or this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

18.     *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in the Interim Order and this Final Order, including, without limitation, in paragraph 4 of this Final Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, in paragraph 4 of this Final Order, shall be binding upon all other parties in interest and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless: (a) such other party in interest with requisite standing (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 18) by no later than  (i) the earlier of an order confirming a chapter 11 plan and 75

Error! Unknown document property name.

calendar days after entry of the Interim Order, (ii) any such later date as has been agreed to, in writing, by the Prepetition Administrative Agent (with the consent of the Required Lenders (as defined in the Prepetition Credit Agreement)) as applicable, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Debt or the Prepetition Credit Agreement Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against the Prepetition Credit Agreement Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Existing Agreements, the Prepetition Debt, the Prepetition Credit Agreement Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such

Error! Unknown document property name.

proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in the Interim Order or this Final Order, including, without limitation, those contained in paragraph 4 of this Final Order, shall be binding on all parties in interest; (b) the obligations of the Loan Parties under the Existing Agreements, including the Prepetition Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Credit Agreement Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Debt and the Prepetition Credit Agreement Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by any party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by any party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Credit Agreement Secured Parties and their Representatives arising out of or relating to any of the Existing Agreements shall be deemed forever waived, released and barred.  If any such Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Final Order, including, without limitation, those contained in paragraph 4 of this Final Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph)

Error! Unknown document property name.

on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code) standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Existing Agreements, the Prepetition Debt or the Prepetition Credit Agreement Liens.

19.     *Limitation on Use of DIP Financing Proceeds and Collateral.* Notwithstanding any other provision of this Final Order or any other order entered by the Court, no DIP Loans, Debtor Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Guarantor, or any trustee appointed in the Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against any of the DIP Agent, the DIP Lenders, or the Prepetition Credit Agreement Secured Parties, or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, or any action purporting to do the foregoing in respect of the Prepetition Debt, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the adequate protection obligations, adequate protection liens and superpriority claims granted to the Prepetition Credit Agreement Secured Parties under the Interim Order or this Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Prepetition Debt, the DIP Obligations and/or the liens, claims, rights, or security interests granted under the Interim Order, this Final Order, the DIP Documents or the Existing

Error! Unknown document property name.

Agreements including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; (ii) to prevent, hinder, or otherwise delay the Prepetition Credit Agreement Secured Parties', the DIP Agent's or the DIP Lenders', as applicable, enforcement or realization on the Prepetition Debt, Prepetition Collateral, DIP Obligations, Debtor Collateral, and the liens, claims and rights granted to such parties under the Orders, each in accordance with the DIP Documents, the Existing Agreements or this Final Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition Credit Agreement Secured Parties, the DIP Agent or the DIP Lenders under this Final Order, the Existing Agreements or the DIP Documents, as applicable; (iv) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens permitted pursuant to the Definitive Documentation) or security interests in the Debtor Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, adequate protection liens and superpriority claims and liens granted to the Prepetition Credit Agreement Secured Parties, unless all DIP Obligations, Prepetition Debt, adequate protection obligations, and claims granted to the DIP Agent, DIP Lenders or Prepetition Credit Agreement Secured Parties under this Final Order, have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the Required Lenders; or (vi) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the Required Lenders in or are otherwise included in the Approved Budget.  For the avoidance of doubt, nothing herein shall modify or limit the rights of the Loan Parties set forth in the proviso at the end of Section 8.02 of the DIP Credit Agreement or limit their use of the Carve-Out in connection with such rights.

Error! Unknown document property name.

20.     *Loss or Damage to Collateral*.  Nothing in this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, any DIP Lender or any of the Prepetition Credit Agreement Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts.  So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Debtor Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Debtor Collateral shall be borne by the Loan Parties.

21.     *Final Order Governs*.  In the event of any inconsistency between the provisions of the Interim Order, this Final Order and the DIP Documents or any other order entered by this Court, the provisions of this Final Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents, including, without limitation, the Approved Budget.

22.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition

42

Credit Agreement Secured Parties, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Credit Agreement Secured Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Agent, the DIP Lenders and the Prepetition Credit Agreement Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors).

23.     *Limitation of Liability*.  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C.  §§ 9601, et seq., as amended, or any similar federal or state statute).

24.     *Master Proof of Claim*.  The Prepetition Agent shall not be required to file proofs of claim in the Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Credit Agreement Secured Parties for payment of the Prepetition Debt arising under the Prepetition Loan Documents, including, without limitation, any principal, unpaid interest,

Error! Unknown document property name.

fees, expenses and other amounts under the Prepetition Credit Agreement.  The statements of claim in respect of the Prepetition Debt set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  However, in order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, the Prepetition Agent is authorized to file in the Debtors' lead chapter 11 case *In re Expro Holdings US Inc.,* Case No. 17-60179 (DRJ), a single, master proof of claim on behalf of the Prepetition Credit Agreement Secured Parties on account of any and all of their respective claims arising under the applicable Existing Agreements and hereunder (each, a "**Master Proof of Claim**") against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the Debtors, the Prepetition Agent and the Prepetition Credit Agreement Secured Parties, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Existing Agreements, and the claim of each Prepetition Credit Agreement Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases.  The Master Proofs of Claim shall not be required to identify whether any Prepetition Credit Agreement Secured Party acquired its claim from another party and the identity of any such party or to be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims.  The provisions of this paragraph 24 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each

44

Prepetition Credit Agreement Secured Party (or its successors in interest) to vote separately on any plan proposed in these Cases.  The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Credit Agreement Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the Prepetition Administrative Agent.

25.     *Insurance*.  To the extent that any of the Prepetition Administrative Agents is listed as loss payee under the Borrowers' or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted), and <u>second</u>, to the payment of the Prepetition Debt.

26.     *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable <u>nunc pro tunc</u> to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

27.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

28.     *Payments Held in Trust*.  Except as expressly permitted in this Final Order or the DIP Documents, in the event that any person or entity receives any payment on account of a

Error! Unknown document property name.

security interest in Debtor Collateral, receives any Debtor Collateral or any proceeds of Debtor Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Debtor Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Final Order.

29.     *Credit Bidding*.  (a) The DIP Agent shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the Debtor Collateral, and (b) the Prepetition Credit Agreement Secured Parties shall have the right to credit bid up to the full amount of the Prepetition Debt in any sale of the Debtor Collateral, in each case, as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

30.     *The Interim Order*.  Except as specifically amended, supplemented or otherwise modified hereby, all of the provisions of the Interim Order shall remain in effect and are hereby ratified by this Final Order.

31.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

32.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

46

33.    *Retention of Jurisdiction*.  The Court shall retain jurisdiction to enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

**Signed:  January 25, 2018.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Error! Unknown document property name.